THOMPSON *v.* COVEY.

4-8758                                                    218 S. W. 2d 709

Opinion delivered March 14, 1949.

Rehearing denied April 11, 1949.

*J. H. Carmichael, Jr., Wilson & Starbird* and *Carmichael & Hendricks*, for appellant.

*Batchelor & Batchelor,* for appellee.

GRIFFIN SMITH, Chief Justice. When Edgar Covey sued for debt and sought foreclosure March 21, 1947, O. D. and Nellie H. Thompson were husband and wife. Ollie E. Thompson is their unmarried daughter. O. D. Thompson was committed to State Hospital thirteen days before the complaint was filed. There was an adjudication of insanity March 16 and Mrs. Thompson was appointed guardian.

The defenses are (1) that when notes and mortgages were executed O. D. Thompson was mentally irresponsible, and (2) the homestead was included in one of the mortgages and the mortgage was not acknowledged. It was further contended that Mrs. Thompson did not intend to mortgage the homestead.

Transactions between Covey and the Thompsons pertaining to subject-matter of the appeal began September 6, 1944, with a $1,000 loan by Covey. The note, due a year after date, was secured by a mortgage on Lots Eleven, Thirteen, and Fifteen, Meyers Addition, in the City of Van Buren. December 18, 1945, (the $1,000 note not having been paid) Covey advanced an additional $3,000. This loan was secured by a mortgage on Lot Three and the north half of Lot Two, etc., and Lots Eleven, Thirteen, and Fifteen, ". . . less north fifty feet of above described land sold to Harry Staggs".[1] April 13, 1946, O. D. and Nellie Thompson borrowed from Covey $315 additional, for which a ten per cent note was given. To secure this loan the Thompsons assigned to Covey a series of $20 notes that in turn were secured by a real estate mortgage executed by W. O. Stringer.

*First—Evidence of Insanity.*—Our review of the evidence sustains the Chancellor's finding that Thompson was not incompetent when the mortgages were made. There were circumstances from which an inference of mental deficiency arose, and these if considered alone would cast doubt upon Thompson's ability to understand the nature of commitments he made. On the other hand, it was undisputed that he continued to attend to business affairs for a considerable period after the mortgages were made. He was a lawyer, and in 1945 represented clients. When the Municipal Judge of Van Buren joined the armed forces, local attorneys elected Thompson as interim Judge, a position he filled from September, 1943, until February 15, 1946, when the regular Judge re-

---

[1] In response to a motion to make more definite and certain, the plaintiff said: "At the time the $3,000 loan was made, acting on the advice of O. D. Thompson, plaintiff agreed to release the north 50 feet of Lots 11, 13, and 15, . . . and both the home place and the Meyer Addition property were included in the new mortgage. O. D. Thompson and Myrtle Thompson prepared this mortgage."

turned. A bank cashier testified that Thompson handled his financial business, making deposits and writing checks. An acting Constable saw Thompson try ten or eleven cases in Municipal Court December 17 and 18, 1945. There was other testimony indicating normal conduct.

*Second — Failure to Acknowledge Mortgage.* — The mortgage of December 18 was signed by O. E., O. D., and Nellie H. Thompson, but was acknowledged by O. E. Thompson only. It included the so-called homestead. O. E. (Ollie) Thompson had signed the document "for the consideration and purposes therein contained." Official records disclosed that the property belonged to her. By quitclaim deed of November 9, 1942, O. D. and Nellie H. Thompson conveyed to Ollie all of the lands covered by the mortgages, and four additional tracts. The wife relinquished homestead and dower. The recited consideration was $500, receipt of which the grantee denied when called as a witness in the case at bar.[2] She also denied knowing that the deed had been executed, and with equal emphasis insisted that no part of the consideration was paid; nor had she through any conscious act accepted the deed. She also denied "knowing" that she signed the mortgage to Covey, but when asked *why* she signed it her reply was, "Because he told me to"—the reference seemingly having been to her father. She didn't know that in November, 1943, she executed a warranty deed to Elizabeth Sangster, conveying some of the property included in the deed from her father and mother. Other similar transactions were denied, although the signatures were admitted.

O. D. Thompson died August 22, 1947, and his wife died in October of that year. By their conduct in deeding property to Ollie in 1942 the record title was thereafter shown to be in the daughter. Ollie and those associated with her contend, in effect, that when father and mother quitclaimed and failed to pay the consideration of $500, or to deliver the deed, a constructive fraud was perpe-

---

[2] There is no explanation of the grantee's denial that she "received" any part of the recited consideration of $500. Ordinarily the grantor receives and the grantee pays.

trated when the deed was recorded. But neither O. D. Thompson nor his wife would have been heard to deny the deed for the purpose of defeating Covey who relied upon genuineness of the document. For the same reason Ollie and her co-appellants cannot speak for those who conveyed in 1942.

*Third—Validity of Note for $315.*—In their answer appellants asserted that the transaction was void because of Thompson's alleged insanity. At trial Covey testified that he gave a check for $300, "and $15 was interest added to the note." It is insisted in appellants' brief, and was urged in oral argument, that a ten percent note with $15 added as advance interest is usurious as a matter of law, and a plea to that effect was not necessary. There are two answers: Covey had made other loans to Thompson, and the payment *might* have gone as a credit to a separate account. While this appears highly improbable, appellants were not without a remedy when Covey made his answer. We must assume that the trial Court would have permitted a special plea of usury: but, even in the absence of a request, the pleadings would have been treated to conform to the proof if it had been clearly shown that usury was being relied upon in a way to put the plaintiff on notice. Since the plea was not made or suggested, appellee was not required to make further explanation.

Affirmed.